ELMA G. BROWN, *Appellant,* v. LOUISE AVERY, BY HER NEXT FRIEND, A. M. AVERY, *et al., Appellees.*

1. Section 2272 of the General Statutes of 1906 provides that every last will and testament disposing of real estate shall be attested and subscribed in the presence of the testator by

two or more witnesses, and Section 2273 provides that "no such devise or disposition of lands, tenements or hereditaments, or any part or cause thereof, shall be revocable by any other will or codicil, unless the same be in writing and made as aforesaid;" *Held*, that the provision in such Section 2273 has no appicability to personal property, even though such personal property be embraced in a will divising real estate.

2. Section 2274 of the General Statutes of 1906, providing that "all wills of personal property shall be in writing and signed by the testator or some other person in his presence, and by his express direction," is practically declaratory of the rule already existing at common law. No subscribing witnesses thereto are requisite.

3. A will executed in this State, purporting to devise both real and personal estate within this jurisdiction, but with no subscribing witnesses thereto, is valid as to the personalty, if valid in other respects, though inoperative as to the real estate.

4. A demurrer admits the truth of all such matters of fact as are sufficiently pleaded, but allegations of mere conclusions of law are not admitted by a demurrer, for the law is to be ascertained by the court.

5. A demurrer does not admit as true allegations which the law would not allow to be proved.

6. As a general rule, parol evidence is inadmissible for the purpose of showing that an instrument purporting to be a will, fair and regular on its face, properly executed as such, was not intended to operate as a will.

Appealed from the Circuit Court for Escambia County.

STATEMENT.

The following instrument with due proof of the execution thereof, was filed with the County Judge of Escambia County and offered for probate as the last will and testament of Emily C. Wright, deceased:

"I, Emily C. Wright, of the City of Pensacola, State of

Florida, being of sound mind and memory, do make and publish this, my last Will and Testament, revoking all others:—

1.  I give and bequeath to Cornelia Scriven Brown all of my stock in the First National Bank of Pensacola, and direct that the same remain in the possession and control of the persons hereinafter designated as my executors— of my last Will and Testament, until she is twenty-one (21) years of age, and that all of the earnings and dividends of the said stock shall be paid to her mother directly for her education and maintenance until she is eighteen (18) years of age, and thereafter directly to her;

2.  I give and bequeath to Cornelia Scriven Brown all of my silverware of every description, to be handled and used by her until she is eighteen (18) years of age, in such manner as said E. G. Brown & R. M. Cary, executors, shall direct;

3.  I give and bequeath to Henry Wright Brown Five Thousand ($5,000.00) Dollars to be paid to him when he attains the age of twenty-one (21) years, but to be held in trust and handled for him until that time by the said

The foregoing bequests 1, 2, 3, to Henry Wright Brown and Cornelia Scriven Brown are upon condition that they be allowed to, and do remain in their mother's custody and care until they respectively become twenty-one (21) years of age. The violation of this promise shall work a forfeiture in the mother's favor—and it is my wish that their mother make a will designating a guardian for them in the event of her death before their majority;

.4.  I give, bequeath and devise to my sister, Mrs. Marian E. Caldwell, the lot, together with the improvements thereon on Tarragona Street in the City of Pensacola, which I received from my father's estate, to belong to her in fee simple;

5. If my servant, Bella Morris, remains in my employment until my death, I direct that she be paid the sum of Two Hundred ($200.00) Dollars;

6. All the rest and residue of my property, real, personal, and mixed, I give, devise and bequeath in fee simple to my adopted daughter, Elma Gertrude Brown, for the term of her natural life, and upon her death such property shall go in fee simple to her children, the said Cornelia Scriven Brown and the said Henry Wright Brown, share and share alike, to be possessed, managed and taken care of by a Trustee to be designated by her in her Will, failing which action by her, then in the care and custody of a person not of kin to them, to be legally appointed; but this provision shall not have the effect of interfering with the use of the said property by the said Elma Gertrude Brown, and she is to have the right to sell parts thereof and re-invest the proceeds from time to time, with the approval of the executors hereinbefore provided for;

7. I hereby appoint as executors of this my last Will and Testament, R. M. Cary and E. G. Brown, to serve without bond.

IN WITNESS WHEREOF, I have hereunto signed my name on the 7th day of January, A. D. 1911.

The foregoing instrument was executed in our presence upon the day and year above written by the said Emily C. Wright, and, at her request, we hereunder sign our names as attesting witnesses in her presence and in the presence of each other.                 Emily C. Wright.

W. A. Ray,

A. M. Avery, Jr."

At the same time the following paper was also offered for probate as the last will and testament of such decedent:

"I, Emliy C. Wright of the County of Escambia, State of Florida, do make this my last will and testament on this the twenty-seventh day of June, 1911—

It was my intention to leave most of my estate to my adopted daughter, Elma Gertrude Brown, but as she has offended my feelings and acted in a way repugnant to my feelings of propriety—I leave to her one hundred dollars per month and a house, either one of the East Gregory St. houses or one of the Spring St. houses—whichever she chooses.

My First National Bank stock and my house corner of Loyd and Barcelona St.—— I leave to Cornelia Scriven Brown, the income from bank stock to be paid for her maintenance and education to her guardians until she is eighteen years of age, after that directly to her—she must before marrying be made a free dealer—

I leave one thousand dollars for my funeral expenses and a slab, similar to that in cemetery over my husband.

To Henry Wright Brown, I leave five thousand to be paid him when of age—also want him to be well educated at expense of estate.

To Louise Avery if she continues to live with me I leave ten thousand worth of mortgages—the principal not to be paid her until she is 21 yrs. of age—

After both Brown children are of age—any residue to be equally divided between them.

To my sister, Mrs. Marian Caldwell, I leave the brick building on Tarragona St. inherited from my father—A. L. Avery.

To Cornelia Scriven Brown I leave my silverware, china & all household furniture.

                                        Emily C. Wright."

The foregoing document was produced and offered for probate by John C. Avery, Esq., and. was enclosed in an envelope upon which the following endorsement appears:

    "J. C. Avery, Aty

        American National Bank Building—City."

At the same time the following affidavit was filed:
"State of Florida,)
Escambia County.)

Before the undersigned personally appeared John C. Avery, who being duly sworn, deposes and says that he verily believes that the writing herewith exhibited as the last will and testament of Emily C. Wright, deceased, date June 27th, 1911, is the true last will and testament of the said deceased, and that he has no interest under the said will, and the same is in the handwriting of the deceased and that the signature thereto is her genuine signature and that he is well acquainted with her hand writing.                    Jno. C. Avery.
Sworn to and subscribed before me
this 15th day of August, A. D. 1911.

            Henry Bellinger,
(Official Seal)   County Judge."

The appellant, Elma G. Brown, filed a petition, protesting against and resisting the probate of the instrument purporting to be a will, last copied above, which petition is as follows:

    "In re Estate of Emily C. Wright,
    Application to probate Will.

        To the Hon. Henry Bellinger, County Judge.

The petition of Elma Gertrude Brown of Escambia

County, Florida, would respectfully show unto your Honor:—

1.  That by the last will and testament of Emily C. Wright late of Escambia County, Florida, who died therein on July 23rd, 1911, which last will is dated January 7th, A. D. 1911, and which will be filed with you upon application for probate thereon on August 15th, 1911, petitioner is constituted devisee and legatee of certain real and personal property of the testatrix therein mentioned.

2.  That these will be offered for probate as and for the last will and testament of said Emily C. Wright, as to all or a part of the property of said Emily C. Wright, a document purporting to have been signed by said Emily C. Wright on June 27th, 1911; that by the terms of the said document your petitioner is named as legatee and also a devisee of certain real property of said Emily C. Wright.

3.  That petitioner desires to contest the probate of the document mentioned in paragraph 2 above as the last will and testament or a part of the last will and testament of said Emily C. Wright, and to that end files this petition as provided by the laws of Florida.

4.  That the facts constituting the grounds of petitioner's contest of probate of the document mentioned in paragraph 2 above are as follows:

A.  The said document was not at the time it was signed, or afterwards, intended by the said Emily C. Wright to be her last will and testament, or part of same.

B.  The said document was intended by the said Emily C. Wright to be merely a memorandum for John C. Avery, Esq., her attorney, who had drawn the previous will of January 7th, 1911, to enable him to prepare another will

for her, and said document was not intended by said Emily C. Wright to be her last will. That said John C. Avery, Esq., upon receiving said document, did prepare in accordance with the said document a paper in proper form purporting to be the last will and testament of said Emily C. Wright with places for the signature of said Emily C. Wright and two witnesses, and sent same to the said Emily C. Wright to be executed, but though said Emily C. Wright received said paper so drawn by said John C. Avery, Esq., and had ample opportunity to execute it before her death, yet she did not execute same, but kept it among her papers intending not to execute it, and left it unexecuted at the time of her death.

C. The said document does not purport to have been signed, nor was it signed in the presence of two witnesses, so that as to real estate it is in law invalid. Being invalid as to real estate, it is invalid as to personal property as well, because as appears upon its face, in connection with the fact that the said Emily C. Wright left a prior valid unrevoked will as to the whole of her real and personal property, the said document was not intended, nor should it be construed as a revocation of such prior will, nor as being effective as a valid will of personal property, except upon condition that it should likewise be valid as to the real estate of said Emily C. Wright, which it is not.

D. The said document purports to devise and bequeath both real and personal property, but is not signed in the presence of two witnesses whereby it is invalid as a devise. Its provisions as to disposition of real and personal property are dependent one upon the other, and the document not having been signed in the presence of two witnesses and being invalid therefore as to real estate, is likewise invalid as to personalty.

E. The said document was not intended by said Emily

C. Wright to be testamentary; nor was it signed by her with testamentary intent.

Wherefore, petitioner prays that said document mentioned in paragraph two above, be not admitted to probate and for such other relief as may be appropriate.

Elma Gertrude Brown, Petitioner.

Aug. 14th, 1911."

Personal service was had upon all the persons interested as devisees, legatees, or otherwise in the probating of such papers, with the exception of Louise Avery, a non-resident, who was served by publication. Lucius S. Brown, their father, was appointed guardian *ad litem* to represent Cornelia Scriven Brown and Henry Wright Brown, infants, who filed an answer, submitting their rights and interests to the court for adjudication. A. M. Avery was appointed guardian *ad litem* for Louise Avery, who was also an infant, and filed the following demurrer to the petition of Elma G. Brown:

"Louise Avery, by A. M. Avery, her guardian *ad litem,* demurs to the petition of Elma Gertrude Brown herein, because the same is bad in substance, in this:—

As to the grounds numbered A, B, and E,—

1. It appears from the face of said petition that parol testimony varying the meaning of the instrument offered for probate will be necessary to establish the said grounds in said petition;

2. That the will offered for probate is complete in itself and shows a testamentary intention;

3. That the said grounds are insufficient in law.

As to the grounds numbered C and D—

1. That said grounds set up no sufficient reason why the said will should not be probated as a will of personalty;

2. That the instrument offered for probate as a will of

personalty is not conditioned on its being valid as a will of realty;

3.   The disposition of real and personal property are not dependent one upon the other;

4.   That the said grounds are insufficient in law."

The County Judge made the following order upon the demurrer:

"The demurrer of Louise M. Avery, by A. M. Avery, her next friend, to the petition of Elma Gertrude Brown filed herein, coming on to be heard, and having been submitted to the court upon argument of counsel for the respective parties, and the court having duly considered same and being advised of its opinion that said demurrer is well taken;

It is therefore ordered and adjudged by the court that the said demurrer be, and the same is hereby sustained; and the said Elma Gertrude Brown, announcing that she did not desire to amend her petition, and final judgment upon the demurrer being requested by the said Louise M. Avery by her next friend, A. M. Avery, final judgment upon said demurrer is hereby rendered; and

IT IS ORDERED, ADJUDGED AND DECREED that the two instruments offered for probate herein, to-wit:— The one dated January 7th, A. D. 1911, and the other June 27th, A. D. 1911, be, and they are hereby admitted to probate as the last will and testament of the said Emily C. Wright, deceased, and that letters testamentary do issue to R. M. Cary and Elma Gertrude Brown, as Executor and Executrix of said last will and testament.

The said Elma Gertrude Brown excepted to the ruling of the court upon the demurrer to her said petition, and the entry of final judgment thereon, and to so much of this order as admits to probate the said instrument dated

June 27th, 1911, and in open court at the time of said decisions the said Elma Gertrude Brown did enter her appeal from said orders to the Circuit Court of Escambia County, Florida, returnable Friday, November 10th, A. D. 1911, and gave notice in open court of said appeal.

At Pensacola, Escambia County, Florida, this October 9th, A. D. 1911.

Henry Bellinger, County Judge.

An appeal from which such order was taken by Elma G. Brown to the Circuit Court, which resulted in such order being affirmed as follows:

"This cause coming on to be heard upon the appeal of Elma Gertrude Brown from the order entered herein in the Court of the County Judge of Escambia County, Florida, sustaining the demurrer of Louise Avery by her next friend, A. M. Avery, to the petition of the said Elma Gertrude Brown, and admitting to probate the will of the said Emily C. Wright, deceased, and the court having heard the arguments of counsel, and being advised of its opinion:

It is ordered, adjudged and decreed that the order appealed from be and the same is hereby affirmed at the cost of the appellant, Elma Gertrude Brown.

Done this 23rd day of November A. D. 1911, at Pensacola, Escambia County, Florida.

J. Emmett Wolfe, Judge."

From this order of the Circuit Court Elma G. Brown has entered her appeal to this court, in accordance with the provisions of Section 1710 of the General Statutes of 1906. Several errors are assigned, but they present only one point for determination, the correctness of the ruling sustaining the demurrer to the petition.

*Blount* & *Blount* & *Carter,* for Appellant;

*Jones* & *Pasco,* for Appellees.

SHACKLEFORD, J., *(after stating the facts.)*—There is no contention over that portion of the order admitting to probate the paper bearing date the 7th day of January, 1911, as the will of Emily C. Wright, deceased. The question which we are called upon to answer is was the paper bearing date the 27th day of June, 1911, properly admitted to probate as a Codicil to such will? It is conceded that such paper could have no force or effect as to the real estate which it attempts to devise, for the reason that it was not executed in accordance with the requirements of Section 2272 of the General Statutes of 1906, which is as follows:

"2272 (1795) Form of.—Every last will and testament disposing of real estate shall be signed by the testator, or by some other person in his presence and by his expressed directions, and shall be attested and subscribed in the presence of the said testator by two or more witnesses, or else it shall be utterly void and of non-effect."

It is contended by the appellant that, as such paper has no subscribing witnesses thereto, it is also ineffectual to dispose of the personal property. In support of this contention the appellant relies upon the succeeding section 2273, which is as follows:

"2273. (1796)   Revocation of.—No such devise or disposition of lands, tenements or hereditaments, or any part or clause thereof, shall be revocable by any other will or codicil, unless the same be in writing and made as aforesaid; but every such last will and testament, devise or disposition, may be revoked by any other writing signed by the testator, declaring the same to be revoked,

or operating as a revocation thereof by law, or by burn-
ing, cancelling, tearing or obliterating the same by the
testator or by his direction and consent, or by the act and
operation of law."

It is strenuously urged that the provision therein "No
such devise or disposition of lands, tenements or heredita-
ments, or any part or clause thereof, shall be revocable
by any other will or codicil, unless the same be in writ-
ing and made as aforesaid," referring to the preceding
section 2272, is conclusive of the matter. This might be
tenable if the words "any part or clause thereof," could
properly be construed to refer to any part or clause of the
will, but, as an examination of such two sections plainly
shows, they relate only to wills of real estate, therefore
such words must be held to refer only to a devise or dispo-
sition of real estate. We think that the reasoning in Mc-
Leod v. Dell, 9 Fla. 451, disposes of this point adversely
to the contention of the appellant. We are strengthened
in this conclusion by the fact that the very next section
in the General Statutes reads as follows:

"2274. (1797)   Form of.—All wills of personal prop-
erty shall be in writing, and signed by the testator or
some other person in his presence, and by his express
direction."

This section made its appearance for the first time in
the Revised Statutes of 1892 as Section 1797, but it was
practically declaratory of the rule already existing at com-
mon law. See Hays v. Ernest, 32 Fla. 18, 13, South. Rep.
451. It will be observed that at the time of the execution
of the will discussed in that case the statute required three
or more subscribing witnesses to a will devising real
estate. This statutory requirement remained in force until
the adoption of the Revised Statutes of 1892 section 1795,

of which reduced the number of witnesses from three or more to two or more. This section was incorporated in the General Statutes of 1906 as section 2272, which we have copied above. It was expressly held in Hays v. Ernest *supra*, that "A will executed in this State in the year 1885, purporting to devise both real and personal estate within this jurisdiction, but signed by only two subscribing witnesses is valid as to the personalty, if valid in other respects, though inoperative as to the real estate." Squarely in line with this holding, we must hold that the paper bearing date the 27th day of June, 1911, purporting to devise both real and personal estate within this jurisdiction but with no subscribing witnesses thereto, is valid as to the personalty, if valid in other respects, though inoperative as to the real estate. Having determined this point, we must now determine whether or not such paper was valid as a will in other respects. In other words, was it amenable to the other grounds urged against it in the petition of the appellant?

As was set out in the statement preceding this opinion, Louise Avery, one of the appellees, interposed a demurrer to this petition, the sustaining of which forms the basis for this appeal. Sections 2279 to 2283 inclusive of the General Statutes of 1906 provide for the contest of wills before probate, and one of such provisions is that a demurrer may be filed by one of the parties in interest to the petition, resisting the probate of the will, in order to test the legal sufficiency of such petition. Section 1710 of the General Statutes of 1906 provides that appeals from the County Judge to the Circuit Court in probate matters, as also appeals from the Circuit Court to the Supreme Court "shall be governed in all respects by the law and rules regulating appeals in chancery." From these statutory

provisions it is manifest that the Legislature contemplated and intended that the practice prevailing in a court of equity should be observed, as nearly as may be. It is a well settled principle of equity practice that, "While a demurrer to the whole bill operates as an admission that all the allegations in the bill which are well pleaded are true, it is only such allegations so pleaded that are admitted by the demurrer." McClinton v. Chapin, 54 Fla. 510, 45 South. Rep. 35, 14 Ann. Cas. 365. As was also held in H. W. Metcalf Co. v. Orange County, 56 Fla. 829, 47 South. Rep. 363, "The effect of a demurrer is to admit the truth of all the facts that sufficiently appear by the bill of complaint, and to assert that in the particulars stated in the demurrer the bill is insufficient to show a cause of action. While all facts necessary to be proven should be alleged it is sufficient if the ultimate facts be stated without details or the circumstances that are comprised within or that go to prove the ultimate facts. Allegations of mere conclusions of law are not traversable, need not be alleged, and, if alleged, may be treated as surplusage; and they are not admitted by a demurrer, for the law is to be ascertained by the court. But all facts sufficiently alleged and the conclusions necessarily resulting from facts stated are admitted by the demurrer." We might add that this principle is also true of a demurrer interposed in an action at law. See Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, wherein we held that "It is elementary that a demurrer admits the truth of all such matters of fact as are sufficiently pleaded."

It is incumbent upon us to determine what matters of fact are sufficiently pleaded in the petition to be admitted as true by the demurrer. We have already disposed of the

allegation that the paper, the probate of which was contested by the appellant had no subscribing witnesses thereto, by holding that such witnesses were not requisite, in so far as the disposition of the personal property was concerned.  The other allegations contained in the petition reduced to their ultimate analysis, in effect simply charge that Emily C. Wright did not intend that such paper should operate as her last will and testament.  The appellant also proceeds to set forth in her petition her reasons in support of her contention that such paper was not executed with testamentary intent.  It will be observed that no fraud, deception, undue influence, forgery, lack of testamentary capacity, or the like, is alleged in the petition.  We also call attention to the fact that, at the time such paper bearing date the 27th of June, 1911, was produced and offered for probate, the affidavit of John C. Avery, Esquire, who offered such paper, was also filed, which affidavit we have copied in the statement preceding this opinion.  Such affiant states that he was well acquainted with the handwriting of Emily C. Wright and that such paper was in her handwriting and that the signature thereto was her genuine signature. The question before the County Judge was whether or not such paper was entitled to probate.  In determining it he had before him such paper and affidavit, petition and demurrer thereto. The statement contained in Judge Avery's affidavit that the paper so offered for probate was in the handwriting of the alleged testatrix and that the same was signed by her was not denied by the appellant.  We have a number of decisions to the effect that, "In the construction of a will, the intention of the testator, as therein expressed, shall prevail over all other considerations, if consistent with the principles of law.  To this first and great rule

in the expision of wills, all others must bend." Lines v. Darden, 5 Fla. 51. Also see Lott v. Meacham, 4 Fla. 144, text 152; Russ v. Russ, 9 Fla. 105; Robinson v. Randolph, 21 Fla. 629, text 644 58 Am. Rep. 692; Floyd v. Smith, 59 Fla. 485, 51 South. Rep. 537. As was well expressed in Russ v. Russ, *supra*, "The intention of the testator is the polar star to guide in the construction of a will." This intention must be ascertained from the will itself, if it be possible to do so. Parol evidence is admissible only to explain a latent ambiguity or the like. In addition to the authorities already cited, see McLeod v. Dell, 9 Fla. 427, and Jenkins v. Merritt, 17 Fla. 304. That the rule which we have adopted is in line with the general rule upon the subject, see 30 Amer. & Eng. Ency. of Law (2nd ed.) 661, 662, 673, 674, and the authorities cited in the notes. Why should not a like rule be adopted as to ascertaining whether or not a written instrument executed by a party, purporting to be his last will and testament, was so intended by such party? Are not the two cases analagous? In the instant case we have a paper which is in the handwriting of the alleged testatrix signed by her, fair and regular upon its face, free from any ambiguity and in which her intention as to the disposition of her property is clearly expressed. Such paper also directly refers to the paper bearing date the 7th day of January, 1911, executed by her as her will and testament and clearly sets forth her reasons for making certain changes in the disposition of her property. This being true, what occasion is there for resorting to parol testimony in order to ascertain her testamentary intention? Would it not be far safer to let the instrument speak for itself as to such intention? We think so. We recognize the fact that the authorities are divided upon this point. We have exam-

ined the numerous authorities cited to us by the respective counsel for the parties litigant, as well as others, though we shall refer to only a few of them. The instant case in many respects is so unlike most of the cases which have been called to our attention or which we have found that no useful purpose would be subserved by citing and discussing such cases. One of the most nearly in point cases which we have found is Toebbe v. Williams, 80 Ky. 661. In that case the testator wrote and signed a paper and afterwards went to an attorney and submitted it to him for such corrections and suggestions as he might think advisable. "The attorney read it over and made four unimportant suggestions in pencil between the lines of the pen and ink writing and in the unoccupied space at the end of lines, there being no blanks in the will." He also ran his pencil over certain words, but left them plain and easily to be read. The attorney also told the testator that in the State of Kentucky a will wholly written by the maker did not require any witnesses, but that a will not so written did require witnesses and gave the testator a form of attestation, written in pencil on a scrap of paper, which the testator carried away with him. As is further stated in the opinion: "The will was found after his death in a box under his bed. It was in wrappers on which was written the words 'Old Will,' 'Will' 'Will and map,' and 'Winchester account,' and an old form or unfinished will and the Winchester account were with it in the wrappers. Following Daly's (the testator's) name, on the last page, is an attestation in form like the one written by the attorney, but not signed by any witnesses. The probate of the paper was contested on the ground that it was not a completed will." We will add that the will was not re-writ-

ten, but was found with the pencil suggestions therein made by the attorney. We copy the following excerpts from the opinion:

"If the paper was wholly written and subscribed by Daly, with the intention of making it his will it was his will, although he may not have thought it was a completed paper by reason of a mistaken notion on his part that the law required witnesses to such a paper. It was a complete and lawful will when he presented it to the attorney for verbal suggestions."

"And whether, according *to his mind,* it was a completed paper or not, if he intended it as his will and had complied with the forms of law by writing and signing it himself before the pencil suggestions were made, it is his will, and it ought to be probated notwithstanding he sought the verbal suggestions which he did not adopt, and erroneously believed that the attestation of witness was necessary, or contemplated the possibility of a change of mind, when he might be unable to write or desire some other person to write a will for him when the attestation form would be important."

"Evidence of verbal statements made by the testator, after making his will, according to the forms of law to the effect that he has not made a will, do not constitute a revocation and possess but little value and when permitted to go to the jury they should be instructed that such statements do not tend to prove revocation, and furnish no light in construing the written acts of the testator."

If this is a correct statement of the law, as it would seem to be, it would not have availed the appellant, even if she had been permitted to offer testimony in proof of all the facts stated in her petition. See also the following authorities, which bear upon the point we are now consid-

ering: Myers v. Hoppe, 61 Md. 207 48 Amer. Rep. 89; McBride v. McBride, 26 Gratt. (Va.) 476; Whyte v. Pollok, L.R. 7 App. Cas. (Eng.) 400, 47 L.T. N. S. 356, 47 J. P. 340; Barwick v. Mullinge, 2 Hag. *225. The discussion and reasoning in Barnewall v. Murrell, 108 Ala. 366, 18 South. Rep. 831, will also prove helpful. This being true, it would follow that the demurrer to the petition was properly sustained. As to the construction put upon the paper in question by the appellant, as set forth in her petition as to the intention of the testatrix, we are of the opinion that it must be held to be simply the conclusions drawn by the appellant which were not admitted by the demurrer. See Dillon v. Barnard, Fed. Cas. 3915, which was affirmed in 21 Wall. (U. S.) 430; 16 Cyc. 277; 12 Ency. of Pl. & Pr. 1026 to 1030; 6 Ency. of Pl. & Pr. 336 to 338. Certainly a demurrer does not admit as true allegations which the law would not allow to be proved. See Rivers v. Brown, 62 Fla. 258, 56 South. Rep. 553, holding that a demurrer was properly sustained to a plea, which sought to lay the foundation for the introduction of parol testimony to contradict the terms of a written instrument upon which the action was based. To the like effect are Solary v. Stultz, 22 Fla. 263, and Booske v. Gulf Ice Co., 24 Fla. 550, 5 South. Rep. 247, which are cited in Rivers v. Brown, *supra,* together with authorities from other jurisdictions. As to whether or not parol evidence is ever admissible for the purpose of showing that an instrument, purporting to be a will and properly executed as such was not intended as a will, there is much conflict in the authorities as we have previously stated. To admit such evidence is undoubtedly to make a special exception to the Hearsay rule. See 3 Wigmore's Evidence, section 1736, where a number of authorities will be found col-

lected. See also In re Kennedy, 159 Mich. 548, 124 N. W. Rep. 516, 28 L. R. A. (N.S.) 417, 18 Ann. Cas. 892, especially the notes, citing authorities on either side of the question; Heaston v. Krieg, 167 Ind. 101, 77 N. E. Rep. 805, 119 Amer. State Rep. 475. In the note found on page 897 of 18 Ann. Cas., the editor states that "The weight of authority supports the rule that evidence is admissible to show that an instrument purporting to be a will and properly executed as such, was not intended to operate as a will but was executed with some other purpose or object in view." _ Judge Freeman took the other view and adhered thereto. See his full note on page 167 of 52 Amer. Dec. and his subsequent note found on page 640 of 70 Amer. State Rep. One of the leading cases in support of the doctrine that parol evidence is admissible is Fleming v. Morrison, 187 Mass. 120, 72 N. E. Rep. 499, 105, Amer. St. Rep. 386, but the reasoning therein does not appeal to us. In re Kennedy, *supra,* is more forcibly and clearly wrought out and seems to us to find support in the better-reasoned authorities. We have given this question a most careful investigation and have examined all the authorities bearing theron which have been cited to us as well as such others as we have been able to find. We have reached the conclusion that, as a general rule, parol evidence is inadmissible for the purpose of showing that an instrument purporting to be a will fair and regular on its face, properly executed as such, was not intended to operate as a will. Even if it be conceded that there may be cases which might call for an exception to this rule, we are clear that no such case is presented here.

We are of the opinion that the demurrer to the petition was properly sustained and that the instrument in question was entitled to be probated as a codicil to the will.

It necessarily follows that the order appealed from must be affirmed.

WHITFIELD, C. J., AND TAYLOR, COCKRELL, AND HOCKER, J. J., concur.